UNITED ELECTRIC RAILWAYS COMPANY *vs.*
THOMAS A. KENNELLY, *Public Utility Adm'r.*

AUGUST 8, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This is an appeal taken by the United Electric Railways Company under general laws 1938, chapter 122, as amended by public laws 1949, chap. 2174, from a decision, findings and order of the public utility administrator denying said company's filing for a complete revision of rates to provide certain increases and changes in the basic fare structure.

The proceedings which resulted in the administrator's decision and order here in question were commenced by the United Electric Railways Company, hereinafter called the company, on June 1, 1951.   The company on that date filed, under G. L. 1938, chap. 122, §45, as amended, a schedule of rates and charges providing for a complete or permanent revision of the basic fare structure in accordance therewith as appears under Docket No. 546.   At the same time it also filed a petition, Docket No. 545, requesting emergency relief under §41 of said chapter.

The petition for emergency relief in substance sought the complete elimination of weekly passes to provide revenue necessary to make up for increased wages.   After a hearing the administrator on August 10, 1951, by his order No. 6639 effective August 19, 1951, denied the specific relief thus prayed for by the company but granted certain emergency relief, namely, the right to substitute a limited punch pass for the regular unlimited weekly pass at an increased price and in order to make up the difference in an estimated deficiency in revenue granted the right to increase the price of transfers from 2 cents to 5 cents.   Such order was

expected to provide increased income in the estimated amount of $250,000 annually. No appeal from that decision and order was taken.

The hearing, however, proceeded upon the company's request for permanent relief under §45 of said chapter in accordance with the proposed schedule of revised rates and charges as set forth in the company's filing, Docket No. 546. After the hearing had been completed the administrator rendered a decision thereon and entered thereunder an order No. 6677, which are now before us on the company's appeal. The company's brief summarizes its reasons of appeal as follows:

"A. That the decision is against the law and the evidence and the weight thereof.

B. That the decision deprives the company of its property without just compensation and without due process of law and deprives the company of the equal protection of the law.

C. That in failing to allow the company a reasonable rate of return on the rate base as found by the Administrator it is contrary to the law and the evidence.

D. That particular portions thereof are likewise contrary to the law and the evidence."

The record discloses that the company's filing for a complete or permanent revision of rates and charges under said §45 requested substantially: (1) complete elimination of the weekly pass; (2) elimination of present lap-over zones; (3) shortening the length of three extensive first-fare zones; (4) raising the price of transfers from 2 cents to 7 cents cash or one token at $6\frac{1}{4}$ cents each; and (5) raising the basic zone fare to 15 cents cash or two tokens valued at $12\frac{1}{2}$ cents, with a corresponding general revision of fares in connection with other zones and particular cases as set forth in the schedule of its filing for complete revision.

The company produced evidence through its engineering, operating, traffic, and accounting experts tending to support its contention that the proper rate base should be

$9,127,586.95; that the company from one cause or another, chiefly increased competitive automobile riding, was being forced to operate at a loss; that its net income was constantly being reduced; that its dividends had been paid in certain years out of surplus rather than out of net income; that considering the value of the property being used and the conditions of competition the present basic fare structure was inadequate to provide a reasonable return; and that a requirement to continue operating on the present deficit basis would amount to unreasonable confiscation and a denial of its rights under the laws of this state and of the United States.

On the other hand the state presented evidence through other traffic and accounting experts who adopted a different approach to the rate base and fare structure and reached different results from those recommended by the experts of the company. According to the evidence for the state the rate base should be $7,867,703.42. This result was based largely on the book values and original cost records, so far as they were available, of the plant and property being used, and on certain appraisal figures by an engineering firm made in 1916 but not entered on the books until June 1929 to reflect a price level existing in 1921. Due allowances apparently were made for depreciation and a "valuation reserve," so called, which represented an increase or "write-up" of the company's plant and property values in the amount of $17,258,260.14 as shown by such appraisal. Generally speaking they did not directly challenge the propriety of the basic cash fares and use of tokens as proposed by the company's experts and apparently agreed with the company's statement that the proposed rates or tariffs were substantially similar to those in effect in certain other New England cities. Nor does it appear that they attacked specifically the evidence and claim of the company as to the need for eliminating overlapping zones and shortening three certain first-fare zones in the interest of non-discrimination and uniformity.

However, they differed at least in certain respects as to recommendations which included: (1) that there should be two mediums of promotional or discount riding rather than only one as proposed by the company; and (2) that the price of transfers should be retained at the level of 5 cents, as was granted by an order under the emergency petition, Docket No. 545, rather than to be further increased to 7 cents or one token priced at 6¼ cents as advocated by the company. The state's traffic expert also recommended a weekly permit at $1 plus a 5-cent fare for each zone, which schedule was similar to the practice apparently prevailing in certain other comparable cities. According to the evidence the adoption of such a schedule would provide $1,678,488, or an increase of 20.65 per cent in the annual revenue as against $1,827,957 which would be obtained under the company's proposal for a complete elimination of all passes and a revision of the existing basic fare and transfer structure as above indicated.

The administrator filed a lengthy decision in which he noted the travel of the case, traced the organization of the company, stated the particular relief which had been given to the company on a previous filing in 1949, and pointed out the general effect thereof. In addition he also discussed the relief granted by him in the emergency order, Docket No. 545, in which the price of transfers was raised from 2 cents to 5 cents. After referring at some length to the testimony of the various experts and summarizing the results to which it would lead he apparently found that in the circumstances $8,000,000 as of June 30, 1951 would be adequate as a basic value for a rate base and he explained why he so concluded. In accordance with his department's policy he added a working capital equivalent to forty-five days' operating expenses excluding depreciation, which made a total rate base in the amount of $8,972,000 as found by the administrator for the purposes of this case.

He further concluded, on the ground that it was "only equitable that all riders should be required to pay the same

charge for transportation in accordance with the distance of their rides," that the complete elimination of the weekly pass should be granted; that such relief was calculated to provide approximately $150,000 annually in increased revenue; and that it would save also the additional amount of $35,000 in administrative costs in connection with the weekly pass. Apparently he concluded that the increased price of transfers from 2 cents to 7 cents, or a token substitute valued at 6¼ cents, as prayed for by the company, should not be granted. Under his emergency order No. 6639, Docket No. 545, he had authorized an increase from 2 cents to 5 cents for transfers and he continued that charge as a permanent revision under order No. 6677 entered in accordance with his decision upon the filing for a complete revision or permanent relief, Docket No. 546.

From that point, however, there appears to be no actual consideration and decision as to the evidence in relation to the request for changes in the basic fare structure, the elimination of certain overlapping zones, and the shortening of three certain first-fare zones that extended over four miles. Indeed in concluding that all further relief at this time should be denied on the ground that "it would not be in the public interest to permit Respondent to place into effect the increased rates of charge through the application of its filed tariff of June 1, 1951," the administrator frankly states that his conclusions as to such basic fare structure rested "primarily upon considerations of the public welfare."

In this connection he noted in substance the existing abnormal conditions arising from increased unemployment which resulted in reduced riding, the relief he had granted in 1949 amounting to approximately $1,000,000 in increased annual revenue, the further grant of emergency relief amounting to $250,000 annually, and the $185,000 to be provided under the instant decision, and he then concluded: "In view of these facts, the Administrator believes that

any tariff revision changing Respondent's basic fare structure and which might subsequently be found to be reasonable, could be effected on a more equitable basis both to the public and to the Respondent at some future time when economic conditions within the area served by the Respondent have returned to a more normal basis."

In our judgment the administrator in the instant case stopped short of performing his full duty under the law by refraining from considering and weighing all the evidence as it relates to the existing equitable interests of *both* the company and the public and making his decision thereon. As we read the decision it appears he considered that unemployment had brought about abnormal conditions which were reflected temporarily in a reduced number of passengers; that such conditions were expected to be transitory; that the increased fares if granted would admittedly bring further automobile competition and even a greater reduction in the number of passengers; and that he did not feel it was proper at the present time to consider and determine the basic fare structure and to fix permanent rates and charges which on a subsequent hearing might be found reasonable. In other words he seems to have given reasons for not presently performing his statutory duty.

Apart from granting relief by eliminating all weekly passes, the administrator refrained from considering and passing on the evidence in connection with the abnormal conditions to find out whether any further relief, qualified or otherwise, was necessary and reasonable in the existing circumstances to protect the equitable interests both of the company and of the public. That such was the general substance and effect of his decision is clear not only from the above-quoted portions of the decision but also from the brief for the state which observes in that connection: "It might be said that the Administrator refused to fix any rates, or again that he refused to change the rates that were

in effect at the time of his order of August 10, 1951, from which no appeal was taken."

We are of the opinion that the administrator was in error in thus refraining from fully considering and weighing the evidence in relation to the conditions which he found to exist and in balancing reasonably and fairly according to law the equitable interests of the company on the one hand and the public convenience and welfare on the other. Under the statute what is reasonable and how much, if any, relief in the existing circumstances should be awarded by way of fixing the rates and basic fare structure, with or without qualifications, is a matter for the administrator to consider and decide in the first instance. In our opinion, by refraining from thus considering and deciding all the issues under Docket No. 546 affecting the basic fare structure in relation to the law and evidence of existing conditions he committed error.

In our judgment a second error on the part of the administrator is his failure to consider the evidence in connection with the request to eliminate the overlapping zones and to shorten the extensive first-fare zones upon three of the company's lines to make them conform more nearly to the other zones in the system. The administrator authorized the complete elimination of the weekly pass for the reason that its continuance was inequitable and discriminatory as to other paying passengers. By the same reasoning and formula thus adopted, the overlapping zones and the excessive portions of the three extensive first-fare zones in question should *on this record* have been eliminated. Apparently the state made no specific contest as to these issues but confined its evidence substantially to recommending a weekly permit plus a 5-cent fare to produce the desired additional revenue. By rejecting this recommendation and granting the company's prayer to eliminate all passes for the reason stated in the decision, the administrator should also have granted these two requests, since they were equally separable from the issue as to the

precise amount of the basic fare, and in any event there appears to be no evidence in the record, as the state left it, to contest the reasonableness of these two requests. Of course any relief given under this filing, Docket No. 546, can and should be considered in the overall picture when the cause is again before the administrator for decision in accordance with our conclusion.

The company further argues that if error is established we should examine the record independently, decide for ourselves what would be a proper decision as to permanent revision and charges in the existing circumstances, and enter a decree accordingly in this court. We do not agree with this contention. General laws 1938, chap. 122, as amended by P. L. 1949, chap. 2174, requires the administrator to hear and determine in the first instance such a petition as is involved here. By §31 of that statute it is provided that "the court shall hear and determine, as soon as may be, the matter, and either sustain or reverse the order appealed from, or any part thereof." In other words the statute as amended places upon this court the responsibility of reviewing, on an appeal, a decision of the administrator and not of making original findings of fact and permanently fixing the basic rates and charges under a schedule filed in accordance with said §45. Since the administrator, as previously stated, failed to complete his duty in that respect we are of the opinion that the cause should be remanded to him with direction that for the reasons above stated a further order be entered forthwith, based on the company's pertinent request and undisputed evidence, eliminating the overlapping zones, and also shortening the extensive first-fare zones on the Crescent Park, Branch avenue and Manton avenue routes, so that these zones may be made to conform reasonably, as nearly as may be, to the other first-fare zones and requirements of the system.

On the question of the particular tariffs and other matters coming within the issue of basic fare structure, which are

the chief subjects of the company's filing, Docket No. 546, we are of the opinion that the administrator should fully consider the issues and evidence as it may be related to existing conditions, to the end that a decision and order may be entered, according to law, which will consider the rights of the company in connection with the public welfare, convenience and interest.

The appeal of the company is sustained in part, and the cause is remanded to the administrator with direction to enter certain orders as above specified eliminating overlapping zones and shortening the three first-fare zones referred to, and otherwise to reconsider and decide the cause in accordance with the direction in this opinion.

*Perkins, Higgins & McCabe, Fred B. Perkins, Earl A. Sweeney,* for appellant.

*William E. Powers,* Atty. Gen., *Robert A. Coogan,* Assistant Atty. Gen., for State.

*Francis J. O'Brien,* Special Counsel.