UNITED STATES, Appellee

v

EUGENE N. POSNICK, Seaman Apprentice,
U. S. Navy, Appellant

8 USCMA 201, 24 CMR 11

No. 9405

Decided August 16, 1957

*Lieutenant (jg) W. W. McNeilly, Jr.,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Matthew J. Faerber, Esq.*

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Guilbert W. Martin,* USN.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was tried and convicted by special court-martial of being absent from his unit—the USS LLOYD THOMAS—without proper authority for about a week, and of missing the movement of his unit through neglect during the same week, in violation of Articles 86 and 87, 10 USC §§ 886 and 887, respectively. He was sentenced to be confined at hard labor for six months, to forfeit a portion of his pay for a

202

like period, to be reduced to the grade of seaman recruit, and to be discharged from the service with a bad-conduct discharge. The convening authority approved the findings but reduced the amount of the partial forfeitures and suspended the bad-conduct discharge until the accused's release from confinement or until the completion of appellate review, whichever occurred later. The supervising authority approved and the board of review affirmed the sentence as approved by the convening authority.

The question before us is whether a charge of unauthorized absence and a charge of missing movement during the period of alleged unauthorized absence are multiplicious. We think that they are.

I

Article 86, supra—where pertinent—states that:

"Any member of the armed forces who, without proper authority—

. . . . .

(3) absents himself or remains absent from his unit . . .

shall be punished as a court-martial may direct."

Article 87, supra—where pertinent—states that:

"Any person subject to this chapter who through neglect . . . misses the movement of a ship . . . with which he is required in the course of duty to move shall be punished as a court-martial may direct."

As it is true that a rose by any other name would smell as sweet, so it is equally true that a man ▌▌ may be punished only once for the same offense regardless of how that offense is labeled. In dealing with the question of multiplicity, we must keep the various facets of the problem clearly defined. For example, the Manual for Courts-Martial, United States, 1951, at paragraph 76a(8) states, and we agree, that an accused may not be punished for both a principal offense and for an offense included therein. The Manual goes further and explains its reasoning by pointing out that this is true because in proving the included offense, it is not necessary to prove any element not requisite to the proof of the greater offense. The basic reason for this is that when dealing with the question of multiplicity of offenses—examining two charges to see if they are separate offenses to determine maximum authorized punishment—lesser included offenses are by definition *not* separate offenses.

To be separate offenses *each* offense must require proof that is not required to prove the other. This does not occur, as we have pointed out above, when the offense is lesser included in the offense with which it is being compared. To state it another way, if the evidence sufficient to support a conviction on one charge will support a conviction on another charge, the two charges are not separate. United States v Yarborough, 1 USCMA 678, 5 CMR 106; United States v Larney, 2 USCMA 563, 10 CMR 61; United States v Redenius, 4 USCMA 161, 15 CMR 161; Blockburger v United States, 284 US 299, 52 S Ct 180, 76 L ed 306; Gavieres v United States, 220 US 338, 31 S Ct 421, 55 L ed 489. This is so because when this test is met the "offenses" alleged are in reality the same offenses. They are essentially the same though the tests of determining this fact may operate under different labels. It is of no consequence that we label the individual test of separateness used, "the gravamen test" or the "juristic norms test," or what have you, if we apply the fundamental rule that a person may not be twice punished for the same offense. The law is not the slave of its own terminology—rather, language is the servant of the law.

Logically every missing movement offense includes an unauthorized absence plus other factors. These additional factors are circumstances that aggravate the offense of unauthorized absence. In these cases the unit, ship, or aircraft, is moving and the accused has knowledge of this movement. The offense can be further aggravated by the subjective cause of the accused's absence—neglect or design. The fact that the absences are alleged in terms of a different span of time is not im-

**203**

portant if the absence alleged is one unit. *Duration* of an un- authorized absence is an aggravating circumstance but is not itself an element though in the case of an Article 86, supra, violation, the punishment depends on the aggravating factor and must be alleged and proved. United States v Emerson, 1 USCMA 43, 1 CMR 43; United States v Lovell, 7 USCMA 445, 22 CMR 235. The offense is the absence, not the duration.

We discussed the offense of missing ship in detail in the case of United States v Thompson, 2 USCMA 460, 9 CMR 90. There, in discussing the nature of the offense, we said:

"We may note at the outset that missing ship through neglect is an offense newly created by the Uniform Code of Military Justice. Under prior Navy law, 'missing movement' required a positive intent to avoid particular shipboard service, and was charged as a violation of Article 22 of the Articles for the Government of the Navy, 34 USC § 1200, as conduct to the prejudice of good order and discipline. See CMO 3, 1916, page 7; CMO 141, 1918, page 16; CMO 4, 1935, page 6. Where the specific intent to avoid scheduled movement was not present, the fact of missing ship was alleged as a matter in aggravation to a charge of unauthorized absence. Naval Courts and Boards, 1937, Section 98, Footnote 33. There was no such offense as missing movement through neglect. The Army, under the Articles of War, recognized the offense of 'absenting himself with the intent to avoid maneuvers,' under Article 61, 10 USC § 1533. Manual for Courts-Martial, US Army, 1949, paragraph 149. Mr. Felix Larkin, in testifying before the House subcommittee on Article 87 of the Uniform Code of Military Justice, 50 USC § 681, said: 'Now, I say that is new, Mr. Chairman. It really is an aggravated form of absence without leave, but the type of absence without leave which is specifically connected with the circumstance of missing a ship or a unit when it is about to move.' Hearings before House Committee on Armed Services, 81st Congress, 1st Session, on HR 2498, at page 1258."

In that case we did not consider the question of multiplicity and our holding was simply that the Government need not prove a causation beyond the duty to move with the unit, that the movement was substantial, that the accused knew of the prospective movement, and *that he was absent without authority* when the ship actually sailed. We did, however, indicate our present holding in our detailed analysis of the offense. In United States v Johnson, 3 USCMA 174, 11 CMR 174, we decided that it is sufficient to allege that an accused missed the movement of his unit without using the term "ship," "aircraft," or "unit." Neither in that case nor in United States v Jones, 1 USCMA 276, 3 CMR 10, did we discuss the issue now before us. It is elementary that a holding in a particular case, affirming that case on issues discussed, is not a holding on every issue that *could* have been raised in the case. The question before us now seems to be a case of first impression with this Court. The argument raised that the offenses here are separate because they come under different Articles of the Code, is no more applicable here than it would be in cases, for example, involving Articles 85 and 86, Uniform Code of Military Justice, 10 USC § 885 and 886. For the reasons discussed above, we believe that the offense of unauthorized absence is a necessarily included lesser offense of the offense of missing movement. When the basis for the two offenses alleged is the same absence, the lesser offense is included within the more serious. In the present case the absence alleged in both charges is the same absence and the unauthorized absence is therefore lesser included in the missing movement offense charged. They are, therefore, multiplicious.

II

It is settled that the legal fact of multiplicity of charges is only significant in consideration of maximum authorized punishment. United States v

Cooper, 2 USCMA 333, 8 CMR 133; United States v McCormick, 3 USCMA 361, 12 CMR 117; United States v Crusoe, 3 USCMA 793, 14 CMR 211; United States v Nelson, 3 USCMA 482, 13 CMR 38. See United States v Soukup, 2 USCMA 141, 7 CMR 17. As paragraph 76*a*(8), Manual for Courts-Martial, supra, implies, there is no error committed until the charges are unreasonably multiplied or unless the court-martial could have considered both allegations when arriving at punishment for what is in reality one offense. United States v Cooper, United States v Nelson, both supra. See United States v Soukup, United States v Crusoe, both supra; United States v McVey, 4 USCMA 167, 15 CMR 167. Cf. United States v Strand, 6 USCMA 297, 20 CMR 13. See paragraphs 26*b*, 74*b*(4), and 76*a*(8), Manual, supra.

In the instant case the president of the court-martial closed the court after hearing evidence in mitigation and extenuation without instructing in open court on the effect of multiplicity on the court-martial's consideration of the sentence. This was error.

### III

The only remaining question is that of prejudice. It is arguable that no prejudice obtained here because the accused was tried by special court-martial whose jurisdiction extended only to imposition of a bad-conduct discharge, six months' confinement at hard labor and forfeitures for a like period. Article 19, Uniform Code of Military Justice, 10 USC § 819. The total punishment that could be given this accused on a basis of both charges alleged, *if tried by general court-martial*, was in excess of the statutory limitation of a special court-martial. But if the correct instructions on effect of multiplicious charges were given to this hypothecated general court-martial—the punishment applicable only to missing movement through neglect—it would have been limited to a bad-conduct discharge, confinement at hard labor for six months, and forfeitures for a like period. See Table of Maximum Punishments, paragraph 127*c*, Manual for Courts-Martial, supra, as amended by paragraphs 2 and 3 of Executive Order No. 10565, of September 28, 1954. *This is coincidentally the maximum punishment imposable, by jurisdictional limitation, by a special court-martial.*

We think that the prejudice in the error goes deeper than merely affecting the maximum amount of punishment. This is only the reflection of the prejudice. The prejudice is that the accused has not had a determination of his sentence on the basis of the single offense he has committed. When this offense is made to appear more numerous than it actually is, by semantical manipulation, the jury must consider only the offense committed by him. Thus, in cases of multiplicity, the law officer, or the president of a special court-martial, must instruct in open court that the maximum sentence imposable is different than the apparent total imposable because of the effect of multiplicity on sentence consideration. This was not done in the instant case and therefore we have no way of knowing what sentence the court might have imposed had they been advised that for the purpose of punishment they could only consider the greater offense. Prejudice is therefore present.

The decision of the board of review is reversed. A rehearing on the sentence is directed.

Chief Judge QUINN concurs.

Judge LATIMER dissents.