241 A.2d 809.

WILLIAM C. HOOPER *vs.* HARRY GOLDSTEIN *et al.*

MAY 8, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. By a writ of certiorari the petitioner seeks to quash a decision of the respondent hearing board dismissing him or approving his dismissal from the police department of the city of Providence.

The case arises out of a series of events which took place on the morning of April 25, 1967. The petitioner, then a member of the city's permanent police department for about 11 years, had been detailed to prevent automobile traffic from proceeding along a portion of a public highway which was being resurfaced. He reported to his duty station at seven in the morning and all went well until about 9:15 a.m. when he observed an automobile approaching along the newly resurfaced pavement. The operator was John Orabona. Even though petitioner signaled in an attempt to prevent the vehicle from proceeding on the newly resurfaced highway, it continued in his direction at a slow rate of speed and did not stop until it reached the point where he was standing.

What then happened is disputed. Whether or not petitioner was struck by Orabona's automobile as it stopped; whether Orabona was struck by petitioner's baton or otherwise assaulted by him or whether instead he was assaulted

by Orabona; and which of the two used profanity and, if so, what the language was, are all matters on which the testimony of petitioner, Orabona, and the other witnesses is in irreconcilable conflict. It is clear, however, that at some point petitioner opened the automobile door and dragged Orabona from the vehicle, and that a scuffle ensued, in the course of which Orabona suffered bruises and contusions about his head, face and eyes. A patrol wagon was then summoned, and Orabona was taken to the police station. The petitioner accompanied him, and after preparing a report of the incident, returned to his post. Upon completion of his tour of duty, he returned to police headquarters and was advised that the chief of police, who by then had investigated the morning's events, had suspended him from the force.

On May 11, 1967, the commissioner of public safety's office notified petitioner to appear, with counsel if he so elected, at 10 a.m. on May 25, 1967 before a hearing board composed of the commissioner of public safety, the director of personnel, and the probate judge to answer charges preferred against him by the chief of police for alleged violations of the rules and regulations of the police department. A copy of the charges and supporting specifications was attached to the notice.

Each of the six charges preferred was for an alleged violation of a specific section of the department's regulations. In substance, they were: (1) improper use of a baton or the use of more force than was necessary for the safe custody of a prisoner or for overcoming resistance; (2) use of excessive force in effecting an arrest; (3) misfeasance; (4) unnecessary violence to a citizen or prisoner; (5) conduct unbecoming an officer; and, (6) conduct tending to cast disrepute on the department. Although there were separate specifications for each of the six charges, each specification in substance was a restatement of the

accusation that petitioner had assaulted or had used excessive force against Orabona on April 25, 1967.

The hearing took two days, and petitioner was present and represented by counsel throughout. He was found "not guilty" on the first charge, but "guilty" of the five others, and was discharged as an officer of the department.

## I

One of the grounds upon which petitioner now seeks relief is that the record contains no evidence of the departmental rules and regulations. That deficiency, he argues, made it impossible, initially for the board and now for us on review, to decide whether the rules and regulations upon which the charges against him were preferred and for the violation of which he was dismissed had in fact been promulgated and whether they were in fact in existence. He brought this question upon the record when, at the close of the hearing before the board, he moved, without success, that the charges against him be dismissed "* * * on the ground [that] there is * * * no credible evidence on the record, that he has violated any [of the] rules and regulations of the City of Providence Police Department."

The fallacy in his argument is its assumption that the board could not take cognizance of the departmental rules and regulations without requiring them to be proved in the same manner as other factual matters. It is, of course, true that, except as otherwise provided by statute, specific municipal ordinances, or the specific provisions of such ordinances, are evidentiary facts which must be proved and are not susceptible to judicial notice by a court of general jurisdiction. *Town of Lincoln* v. *Cournoyer,* 95 R. I. 280, 186 A.2d 728; *Tessier* v. *LaNois,* 97 R. I. 414, 198 A.2d 142. That prohibition stems from the long held notion that "* * * such ordinances * * * stand upon the same footing as private laws, the laws of other states and of foreign

countries, which must be averred and proven like other facts." *Tipp* v. *District of Columbia,* 69 App. D. C. 400, 401, 102 F.2d 264, 265. A refinement of that rule, however, permits in some states and requires in others a municipal tribunal to judicially notice ordinances which are the law of the forum. Such a court, the authorities say, stands in the same relationship to municipal ordinances as does a court of general jurisdiction to public laws. *Tipp* v. *District of Columbia, supra; Page* v. *Wieland,* 137 Ohio St. 198, 28 N. E. 2d 583; *Dibble* v. *District of Columbia,* 35 A.2d 825, (D.C. Mun.Ct. App.); *Banks* v. *B. F. Saul Co.,* 212 A.2d 537 (D.C. Ct. App.); *Orose* v. *Hodge Drive-It-Yourself Co.,* 132 Ohio St. 607, 9 N.E.2d 671, 111 A.L.R. 954; *Sisk* v. *Town of Shenandoah,* 200 Va. 277, 105 S.E.2d 169; *State* v. *Duranleau,* 99 N.H. 30, 104 A.2d 519.

The warrant for an administrative tribunal to recognize the rules and regulations of the agency within which the tribunal exists is found in the same rationale which permits a municipal court to dispense with the necessity of formal proof of an ordinance enacted by the same municipality in which that court sits. In each instance, recognition may be taken because the tribunal stands in a peculiar relationship to the ordinance or regulation which it officially notices. Thus a municipal tribunal may recognize the ordinance enacted by the municipality which created it; and the hearing board, which the Providence charter (sec. 67 as amended by P. L. 1951, chap. 2723, sec. 16) authorizes to act within the police department, may notice the rules and regulations promulgated by the appropriate officials of that department.

The refinement extends even further and permits this court, although ordinarily confined to the record on appeal, to take judicial notice of those ordinances or regulations which an inferior tribunal of original jurisdiction may have properly noticed. *Orose* v. *Hodge Drive-It-Yourself Co., supra; Greif* v. *Dullea,* 66 Cal. App.2d 986, 998, 153 P.2d

581, 588; *BonBright* v. *Biller,* 67 Ohio App. 421, 36 N.E.2d 173. While there are authorities *contra* such as *Anderson* v. *Adamson,* 79 S.D. 429, 112 N.W.2d 612, and *General Services Corp.* v. *Board of Commissioners,* 75 N. M. 550, 408 P.2d 51, the view which permits recognition is in our judgment preferable. The reason for our preference has been given by the U. S. Supreme Court which in an early case said: "But in this court exercising an appellate jurisdiction, whatever was matter of law in the court appealed from is matter of law here, and whatever was matter of fact in the court appealed from is matter of fact here." *Hanley* v. *Donoghue,* 116 U. S. 1, 6, 6 S.Ct. 242, 245, 29 L. Ed. 535,537. Wigmore, in a different context, puts it otherwise, but arrives at the same result when he says: "But the curious layman will ask, in most of these cases, why did not the appellate Court send to the law library for the book and be done with the bother of looking up precedents to authorize and excuse not doing that? Or why not, in oral argument, take a recess, until counsel fetched the book and marked the page? Or even (!!!) why not call up both counsel by telephone and peremptorily order 'habeas corpus istius libri'?" 9 Wigmore, *Evidence,* (3d ed.) §2572, pp. 553-54.

It is to be observed, moreover, that it was not until both parties had rested that petitioner raised before the board what he now claims was the fatal defect of the prosecution's failure to prove the departmental rules and regulations. Petitioner knew he was charged with the violation of certain specific departmental rules and regulations. A copy of the charges and specifications was attached to the notice of the hearing which was served on him. It not only cited by part and section the specific regulation upon which each charge was based, but went further and quoted each such regulation in whole or in part. If petitioner had doubts about the publication, or the existence, or the accuracy of those rules and regulations,

he could have manifested those doubts either by a pre-hearing motion for their production or by other appropriate motion during the course of the hearing. That he failed to do either was in no way occasioned by any fault of the prosecution. The board, having noticed the rules and regulations, was warranted in assuming that they were, in fact, as set forth in the charges, and that petitioner, if he had found them disputable, would have disputed them by evidence. 9 Wigmore, *Evidence, supra,* §2567, p. 535.

## II

Another of petitioner's arguments is that the board exceeded its jurisdiction in failing to comply with those procedures for the removal of police officers which are prescribed by sections 176 and 67 of the Providence charter as amended by P. L. 1951, chap. 2723, sections 1 and 16 respectively. He reads those enactments as fixing the responsibility for removing a police officer initially upon the commissioner and ultimately upon the board. He says that both are required to act and in the order named; that the action of one without the other is insufficient; and that a police officer may not be dismissed from the service unless the commissioner orders his removal from the department rolls, and the board approve that order. Even if his reading of the statutes is correct, he has no cause for complaint because what was in fact done in this case falls well within the purview of what he says should have been done.

The record shows that the chief of police, after investigating the Orabona incident, filed a complaint with the commissioner against petitioner specifying the charges against him together with the details and circumstances concerning the same, and in addition recommended the convening of a hearing board to pass upon the proposed charges. Thereupon, the commissioner investigated further and then, deeming those charges to be of such nature as to warrant petitioner's removal from the force, proceeded

in the manner and form as provided by section 67 of the charter, as amended. He convened the hearing board, notified petitioner of the time and place fixed for the hearing, and furnished him with a copy of the charges and specifications. No suggestion is made that the copy of the charges and specifications thus provided did not satisfy the statutory requirement that the notice served should contain or have attached a certified copy of the complaint. At the hearing which followed, petitioner did not challenge the board's jurisdiction either on the ground now pressed or on any other. Instead, he participated fully, and his counsel conducted a vigorous defense to the charges during the two days of hearings both in the questioning of those witnesses whom the board at his request had caused to appear as well as by his cross-examination of those witnesses who testified on behalf of the prosecution.

Looking to the substance, rather than to the form, of the proceedings and the decision, and assuming without deciding that the appropriate procedure was for the commissioner to dismiss and for the board to approve or to disapprove, we have no difficulty in construing the board's decision as constituting an approval of the commissioner's prior determination that the facts, as presented to him, warranted petitioner's dismissal from the force.

## III

The petitioner also claims that the board denied him a fair trial by refusing to make available any Bureau of Criminal Identification records concerning the witnesses who testified. He does not rely upon strict discovery principles, but instead apparently seeks to bring himself within the protection of that due process principle which will not permit a criminal conviction to stand if it has been affected by the prosecution's deliberate suppression of exculpatory evidence.

The rule which forbids the use of false testimony as well as the improper suppression of helpful evidence, first announced in *Mooney* v. *Holohan,* 294 U. S. 103, 55 S. Ct. 340, 79 L. Ed. 791, has since been followed as well as expanded. *Alcorta* v. *Texas,* 355 U. S. 28, 78 S. Ct. 103, 2 L. Ed.2d 9; *Napue* v. *Illinois,* 360 U. S. 264, 79 S. Ct. 1173, 3 L. Ed.2d 1217; *Miller* v. *Pate,* 386 U. S. 1, 87 S. Ct. 785, 17 L. Ed.2d 690; *Giles* v. *Maryland,* 386 U. S. 66, 87 S. Ct. 793, 17 L. Ed.2d 737. The question, then, is whether under the rule as it now stands the board's refusal to grant petitioner's sweeping request constituted such an impropriety as to deny him a fair trial.

Only recently in *Giles, supra,* the supreme court divided sharply on what constitutes an unlawful suppression. That was a case where, following petitioner's conviction on charges of rape, it was ascertained that the state had deliberately suppressed information at the trial reflecting on the sexual habits of the prosecutrix as well as on the stability of her character. These were matters which reflected on a crucial issue in the case — her credibility. The division was primarily bewteen Mr. Justice Fortas, who concurred with the plurality opinion, and Mr. Justice Harlan, with whom Justices Black, Clark and Stewart joined, dissenting. Justice Harlan said, in substance, that an accused in a criminal case is denied a fair trial if it appears that its outcome would have been different had not the state knowingly used false testimony or permitted it to stand uncorrected, and he said also that "Apart from dicta in *Brady* v. *Maryland,* 373 U. S. 83 [83 S. Ct. 1194, 10 L. Ed.2d 215], the Court has never gone further." *Giles* at 116-117, 87 S. Ct. at 818, 17 L. Ed.2d at 769.

Justice Fortas, however, rejected the Harlan concept that the fourteenth amendment requirements can be fully satisfied merely by obliging the state to disclose only where the effect of non-disclosure would allow perjured testimony to stand uncorrected. His view was that "* * * a support-

able conviction requires something more than that the State did not lie. It implies that the prosecution has been fair and honest and that the State has disclosed all information known to it which may have a crucial or important effect on the outcome," at 101, 87 S. Ct. at 810, 17 L. Ed.2d at 760. It is the State's constitutional duty, he said, "* * * voluntarily to disclose material in its exclusive possession which is exonerative or helpful to the defense — which the State will not affirmatively use to prove guilt — and which it should not conceal." *Id.* at 101, 102, 87 S. Ct. at 811, 17 L. Ed.2d at 760.

Even were we to adopt the Fortas version of the rule forbidding suppression, the question would still remain whether it would help petitioner in this case. This is not a criminal case. Moreover, there has been no showing here that what was withheld, if indeed anything was withheld, would have had an important effect on the hearing's outcome or that it would in any way have been helpful to petitioner. For aught we know, there may have been nothing in the Bureau of Criminal Identification files concerning the witnesses who testified, or if there were anything, it may not have reflected adversely on them or on their credibility.

In *Brady* v. *Maryland, supra,* — a suppression case — the supreme court said: "We usually walk on treacherous ground when we explore state law, for state courts, state agencies, and state legislatures are its final expositors under our federal regime," at 90, 83 S. Ct. at 1198, 10 L. Ed.2d at 220. The converse is, of course, also true where we are asked to extend a doctrine beyond the point where the supreme court has stopped. On the present state of the law we are not prepared to go so far as to say that a refusal of petitioner's buckshot request constituted an improper suppression.

## IV

The petitioner also argues that the board's decision is arbitrary and illegal. He gives two reasons. First, he says that the decision is not supported by "substantial evidence." The short answer is that we do not require that it have such support. We do not exercise the fact-finding function when we review a decision on certiorari. Rather do we confine ourselves to ascertaining whether there is any legal evidence in the record to support the findings. If there is such evidence, we quash the writ; if there is not, we quash the record. *Papineau* v. *Personnel Board,* 101 R. I. 359, 223 A.2d 549; *Henry* v. *Thomas,* 100 R. I. 564, 217 A.2d 668; *Hardman* v. *Personnel Appeal Board,* 100 R. I. 145, 211 A.2d 660; *Morgan* v. *Thomas,* 98 R. I. 204, 200 A.2d 696.

His second reason cannot be disposed of summarily. Because in substance each of the six charges preferred against him grew out of the same alleged excessive use of force upon Orabona and were therefore overlapping, petitioner claims that the board's findings of "guilty" on five charges and "not guilty" on one were inconsistent, and that once the board decided there was not enough evidence to justify a "guilty" finding on the first charge, it should have found him "not guilty" on the others.

The difficulty is, of course, compounded by the board's decision which is completely conclusional and which, except for fixing discharge as the penalty, says only:

"At a meeting held by the Hearing Board, upon reviewing all the evidence, it was determined that the following disposition be made of the charges which have been brought against Patrolman William C. Hooper:

| | |
|---|---|
| Charge I | Not Guilty |
| Charge II | Guilty |
| Charge III | Guilty |
| Charge IV | Guilty |
| Charge V | Guilty |
| Charge VI | Guilty" |

It may well be that these ultimate determinations were consistent and that the evidence which justified a finding of "guilty" on charges II through VI would not support a similar result on charge I, but this we cannot tell from a decision which fails to tell us how evidentiary conflicts were resolved or to advise us of the basic findings upon which the ultimate findings rest.

A decision so uninformative and so lacking in basic essentials makes it impossible, petitioner argues, to determine whether there is any substance to the contention that the findings of "guilty" and "not guilty" are inconsistent. In effect what he is saying is that the decision is so inadequate that it prevents the review process from functioning adequately and properly.

Apart from constitutional considerations, there are several practical reasons why the board's decision should have included basic as well as ultimate findings. Davis says that those reasons "are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." 2 Davis, *Administrative Law Treatise,* §16.05, p. 444.

It is these considerations which have caused us to require that factual determinations be made and to insist upon an ample decisional demonstration of the grounds upon which an ultimate conclusion is predicated. And if a tribunal fails to disclose the basic findings upon which its ultimate findings are premised, we will neither search the record for supporting evidence nor will we decide for ourselves what is proper in the circumstances. Instead, we will either order a hearing de novo or remand in order to afford the board an opportunity to clarify and complete its de-

cision. *Capaldo* v. *Public Util. Hearing Bd.*, 70 R. I. 356, 38 A.2d 649; *Tillotson* v. *City Council*, 61 R. I. 293, 200 A. 767; *United Transit Co.* v. *Nunes*, 99 R. I. 501, 209 A.2d 215; *United Elec. Rys.* v. *Kennelly*, 80 R. I. 64, 90 A.2d 775; *Capaldo* v. *Public Util. Hearing Bd.*, 95 R. I. 442, 187 A.2d 783; *United Transit Co.* v. *Public Util. Hearing Bd.*, 96 R. I. 435, 192 A.2d 423.

The requirement here is not unlike that in zoning cases — cases which to some extent are a special type of administrative proceeding — where only recently we reemphasized the requirement that a decision, at least where the evidence is conflicting, must be factual as well as conclusional, must contain a statement of the reasons and grounds upon which it is predicated, and must point out the evidence upon which the ultimate findings rest. These requirements exist, we said, because the parties as well as the court are entitled to know and should not be required to speculate on the basis for a board's decision. *Coderre* v. *Zoning Board of Review*, 102 R. I. 327, 230 A.2d 247; *Hopf* v. *Board of Review*, 102 R. I. 275, 230 A.2d 420.

We do not suggest that each decision must set out the basic findings in precise or specific language, although if that were done and the findings, both basic and ultimate, clearly expressed there would be little opportunity for misunderstanding or doubt. *Yellow Cab Co.* v. *Public Util. Hearing Bd.*, 79 R. I. 507, 511, 90 A.2d 726, 728. Nor do we suggest that we will not, where appropriate, imply an ultimate finding from the action taken. We did this in *Yellow Cab Co., supra,* where, even though the board did not find in its decision that a public need for additional taxicab service had been established, we implied the conclusion from the board's action in granting a certificate of public convenience and necessity permitting the applicants to operate taxicabs. See 2 Davis, *supra,* §16.07, pp. 455-59.

And if this were a case where there were no evidentiary conflicts and where the only conclusion to which the record

admitted was that petitioner had used excessive force upon and had assaulted Orabona, then we could presume from the board's approval of the dismissal order that the necessary ultimate findings had in fact been made. *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 872, 206 P.2d 355, 358. In those circumstances, no useful purpose would, of course, be served by ordering the case remanded for clarification and completion of the decision. That, however, is obviously not the situation here. And in the circumstances of this case, to require the board to complete and to clarify its decision by setting forth its basic as well as its ultimate findings is not to insist upon a needless compliance with ritual. Rather is it indispensable to a proper review.

## V

One further question merits consideration. It is the effect which flows from the multiplicitous nature of the charges and from the fact that the five charges upon which petitioner was found "guilty" arose out of the same incident. Usually, questions concerning the propriety of trying a person for several distinct offenses arising out of a single incident occur in a criminal context where the possibility that a person may suffer several punishments for the same act creates not only problems of statutory construction, but res adjudicata and constitutional difficulties as well. *Gore* v. *United States,* 357 U. S. 386, 78 S. Ct. 1280, 2 L. Ed.2d 1405; *Martinis* v. *Supreme Court,* 15 N.Y.2d 240, 206 N.E.2d 165.

This, however, is not a criminal proceeding and the regulations do not prescribe a separate or specific punishment for each of the charges preferred. Precedents from the criminal law are not, therefore, controlling. The petitioner recognizes this, and instead of looking to criminal law precedents, he refers to the similarity which exists between a police department and a military organization — a similarity we acknowledged in *Howland* v. *Thomas,* 98 R. I. 470,

477, 204 A.2d 640, 644, — and he relies on decisions of the United States Military Court of Appeals.

That court has remanded for redetermination of a sentence when it is satisfied that the multiple offenses with which a person in the armed forces has been charged constitute in reality but a single offense. *United States* v. *Posnick,* 8 U.S.C.M.A. 201, 24 CMR 11; *United States* v. *Brown,* 8 U.S.C.M.A. 18, 23 CMR 242.[1] While the cited cases are distinguishable inasmuch as the Uniform Code of Military Justice fixed a separate punishment for each of the multiple offenses there involved, whereas in this case no specific or single punishment is fixed for any of the offenses charged, the reasoning, particularly in *Posnick,* is nonetheless apposite. The court there suggested that the danger in the preferment of multiplicitous charges goes "* * * deeper than merely affecting the maximum amount of punishment"; it found an equally real prejudice in the possibility that the cumulative effect of "guilty" findings on several overlapping charges arising out of a single incident was the cause of the imposition of a more severe punishment than would have been imposed if but a single offense were charged.

It may well be that what we said and did in *Howland* v. *Thomas, supra,* runs counter to the *Posnick* rationale. True, the multiple charges in *Howland* may not have been directly associated with a single incident as were those in this case, but in that case we were satisfied to affirm so long as there was competent evidence in support of any one of the charges, and we said at 475, 204 A.2d at 644, "Suffice it to say that after considering the whole record we are clearly

---

[1]See also *Meehan* v. *Macy* decided April 18, 1968 by the Court of Appeals for the District of Columbia and reported at 392 F.2d 822. There a policeman was dismissed on the basis of three charges, two of which were not supported. The court remanded because it was "* * * unclear whether the three charges were deemed by the agency and the Civil Service Commission to constitute separate or cumulative grounds for discharge."

of the opinion that there was legal evidence before the board to support some if not all the charges preferred against petitioner which warranted the taking of disciplinary action against him."

We need not, however, at this juncture of the proceedings elect between the *Posnick* and *Howland* approaches. It will suffice for present purposes if the board advises us whether or not its approval of the dismissal order was prompted or influenced by the cumulative effect of the several offenses charged.

For the reasons stated, the case is remanded to the respondent board for the purpose of affording it an opportunity to clarify and complete its decision herein in accordance with this opinion.

Motion for reargument denied.

*Beals, Sweeney & Jerue, David F. Sweeney,* for petitioner.

*Robert J. McOsker,* City Solicitor, *Edward F. Malloy,* Assistant City Solicitor, for respondents.