DECISION
Before this Court is an appeal by the Divorce Resource Center of Rhode Island (hereinafter "the Center") from a December 4, 2007 decision of the Director of Labor and Training, finding that Gladys Moran's (hereinafter "Ms. Moran") claim against the Center for unpaid wages pursuant to G.L. 1956 § 28-14-4[1] was just and valid. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
On or about January 8, 2007, Ms. Moran filed a claim with the Rhode Island Department of Labor and Training's Labor Standards Division alleging, inter alia, that she was a former employee of the Center and that she was entitled to unpaid wages for the period of March 13, 2006 to October 25, 2006. On September 25, 2007 and November 27, 2007, Mary Ellen McQueeney-Lally (hereinafter "Hearing Officer"), acting as the duly authorized representative of the Director of Labor and Training, held hearings on Ms. Moran's claim against the Center. *Page 2 
At the September 25 hearing, Ms. Moran testified that in May of 2005, she was approached by Lori Grover (hereinafter "Ms. Grover"), the founder of the Center, regarding an administrative assistant/secretarial position with the fledgling organization. (Tr. 9/25/07 at 13.) At this time, Ms. Moran was employed with the United Mortgage Company and was receiving fourteen dollars per hour for her labor. Id According to Ms. Moran's recollection of the offer, she was told by Ms. Grover that she "would be making more money" at the Center than with her current employer. Id Ms. Moran ultimately accepted Ms. Grover's offer and began working as an administrative assistant with the Center on March 13, 2006. (Tr. 9/25/07 at 14.) Prior to commencing her work, Ms. Moran did not sign an employment contract. (Tr. 9/25/07 at 40.)
During the course of her association with the Center, Ms. Moran was provided with a business card indicating her status within the organization. (Tr. 9/25/07 at 14.) See Claimant's Ex. 1. In addition to the business card, Ms. Moran submitted at the hearing an advertisement from "Generation X" magazine, a state-wide publication of the Center, that listed her title as "Administrative Assistant, Gladys B. Moran." (Tr. 9/25/07 at 22-23.) See Claimant's Ex. 5.
Ms. Moran continued her hearing testimony by explaining that she worked at a desk in the Center's "front office reception area" from 9:00 a.m. to 5:00 p.m., five days per week, for a total of forty hours per week. (Tr. 9/25/07 at 15.) During the approximately seven-and-a-half months that Ms. Moran labored for the Center as an administrative assistant, she was not paid the fourteen dollars per hour that, she alleged, had been promised to her by Ms. Grover. (Tr. 9/25/07 at 16.) Ms. Moran produced a *Page 3 
1099 form that indicated that she had been paid only $710 for the duration of her time at the Center. See Complainant's Ex. 2.
Ms. Moran further testified that Ms. Grover encouraged her to begin working for Complete Mortgage, a company with which Ms. Grover had enjoyed a long-standing professional relationship. (Tr. at 9/25/07 at 24.) Ms. Moran accepted this invitation in June of 2006, but made clear in her hearing testimony that all work for Complete Mortgage was performed "after hours." (Tr. 9/25/07 at 26.) In July of 2006, Ms. Moran also began a professional relationship with Banker's Mortgage. (Tr. 9/25/07 at 55.) As Ms. Moran explained, she would complete all of her assignments for the Center between the hours of 9:00 a.m. and 5:00 p.m. and then would receive training from Ms. Grover on the selling of loans and the development of business prospects. (Tr. 9/25/07 at 47-48.) However, Ms. Moran admitted that she occasionally received training from Ms. Grover — training unrelated to her responsibilities to the Center — during the Center's business hours. (Tr. 9/25/07 at 48.)
On cross-examination by counsel for the Center, Ms. Moran testified that she was told by Ms. Grover that she would not be paid "for the first month or two" while the Center began its operations. (Tr. 9/25/07 at 31.) Although Ms. Moran indicated that Ms. Grover promised her that she would be paid once the Center had begun to attract clientele, her wage was never conclusively established. (Tr. 9/25/07 at 34-35.) In addition, Ms. Moran received no benefits, had no vacation time, and was not provided with an employee handbook setting forth her duties, rights, and obligations to the Center. (Tr. 9/25/07 at 44-45.) *Page 4 
With respect to her work schedule, Ms. Moran testified that she was allowed to choose between a 9:00 a.m. to 5:00 p.m. schedule and a 10:00 a.m. to 6:00 p.m. schedule. (Tr. 9/25/07 at 35-36.) However, she indicated that she was not "able to come and go as [she] pleased from the Center." (Tr. 9/25/07 at 36.)
At the November 27th hearing, Ms. Grover testified that there were no employees of the Center for the period between 2005 — 2006, and that she did not claim any employee-related expenses on the Center's taxes. (Tr. 11/27/07 at 4.) Ms. Grover then introduced a letter from her accountant stating that the Center did not have employees under applicable federal tax laws. (Tr. 11/27/07 at 5.) See Respondent's Ex. 4.
Ms. Grover then focused on her initial discussions with Ms. Moran regarding an association with the Center. As Ms. Grover recalled, she offered Ms. Moran a secretarial/administrative assistant position with the Center but noted that this offer was conditioned on the Center's obtaining non-profit status. (Tr. 11/27/07 at 7.) While Ms. Grover admitted that she promised Ms. Moran that she would make more money with the Center than she was making at United Mortgage, Ms. Grover was adamant that this promise was also conditioned on the procurement of non-profit status. Id When the Center's request for non-profit status was disapproved, Ms. Grover explained that her original offer was "off the table" and that she would re-organize the Center as a sole proprietorship. (Tr. 11/27/07 at 10.) According to Ms. Grover's recollection, Ms. Moran expressed a continued willingness to work for the Center, despite the very real possibility that she would not be compensated monetarily. Id Later in the hearing, Ms. Grover explained that her "assistance in helping [Ms. Moran] with [her] eleven plus years *Page 5 
experience [selling loans] [wa]s how . . . [Ms. Moran] was going to be compensated." (Tr. 11/27/07 at 34.)
In her hearing testimony, Ms. Grover re-affirmed that she did not agree to pay benefits to Ms. Moran, did not establish her work hours, did not provide her with an employee handbook, and did not enter into a contractual relationship with her. (Tr. 11/27/07 at 13.) Ms. Grover indicated that there was no discussion of the terms of Ms. Moran's work for the Center and no discussion as to whether Ms. Grover was to be considered Ms. Moran's direct supervisor. (Tr. 11/27/07 at 17.) Further, Ms. Grover stated that Ms. Moran was allowed to set her own hours and that she "c[ould] do whatever [she] want[ed], . . . be there whenever [she] want[ed]." (Tr. 11/17/07 at 14.) According to Ms. Grover, Ms. Moran "came and went as things came up in [her] schedule. . . ." (Tr. 11/27/07 at 18.)
When asked to describe how Ms. Moran allocated her time at the Center, Ms. Grover testified that Ms. Moran "used the [Center's] computer . . . to do loan work [for Complete Mortgage and Banker's Mortgage]" and that "she had the benefit of [Ms. Grover's] guidance. . . ." (Tr. 11/27/07 at 19.) In addition, Ms. Moran would "help out with answering phones and ushering in clients," but that her role was otherwise circumscribed; Ms. Moran did not meet with or advise the Center's clients. (Tr. 11/27/07 at 19, 21.) Ms. Grover answered in the affirmative when asked whether Ms. Moran "conducted business as a mortgage broker at [the Center] during the time that she arrived and the time she left[.]" (Tr. 11/27/07 at 20.)
On December 4, 2007, the Hearing Officer issued her written decision. In the decision, the Hearing Officer made the following findings of fact: that the Center held *Page 6 
Ms. Moran out as an administrative assistant via the business card and magazine advertisement; that Ms. Moran was not a partner in the Center's business and did not share in its profits; that Ms. Moran, by virtue of the fact that she was not a partner in the Center's operations, was automatically to be considered an employee; and that Ms. Moran was entitled to compensation for the time and effort that she devoted to the Center's business. (Hearing Officer's Dec. at 4.) As such, the Hearing Officer concluded that Ms. Moran's claim against the Center pursuant § 28-14-4 was meritorious, and awarded her unpaid wages in the amount of $7092.90.[2] Id The Center, aggrieved by this decision, filed a timely appeal to this Court.
 Standard of Review
Pursuant to § 42-35-15, "[a]ny person, . . . who has exhausted all administrative remedies available to him or her within [an] agency, and who is aggrieved by a final order in a contested case is entitled to judicial review" by the Superior Court. The Court "may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 7 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"In reviewing an agency's decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence." Center for BehavioralHealth, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Newport Shipyard. Inc. v. Rhode Island Commission for Human Rights,673 A.2d 457, 459 (R.I. 1996).
"Questions of law determined by the administrative agency are not binding upon [the Superior Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." State Dep't of Environmental Mgmt. v. State LaborRelations Bd., 799 A.2d 274, 277 (R.I. 2002) (citing Carmody v. RhodeIsland Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986)). Although this Court affords the factual findings of an administrative agency great deference, questions of law — including statutory interpretation — are reviewed de novo. In re Advisory Opinion to theGovernor, 732 A.2d 55, 60 (R.I. 1999) (citing City of East Providence v.Public Utilities Comm'n, 566 A.2d 1305, 1307 (R.I. 1989)).
This Court "require[s] that factual determinations be made" by the agency; there must be "an ample decisional demonstration of the grounds upon which an ultimate conclusion is predicated." Hooper v.Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968). "[I]f a[n] [agency] fails to disclose the basic findings upon which its ultimate findings are premised, [this Court] will neither search the record for supporting evidence nor will [it] decide . . . what is proper in the circumstances. Instead, [this Court] will *Page 8 
either order a hearing de novo or remand in order to afford the [agency] an opportunity to clarify and complete its decision." Id at 44,241 A.2d at 815-816.
 Analysis
On appeal, the Center argues that the Hearing Officer's decision warrants reversal because it is clearly erroneous in view of the reliable, probative, and substantial record evidence. Specifically, the Center contends that the Hearing Officer erred in finding that Ms. Moran was an employee of the Center between March 13, 2006 and October 25, 2006. According to the Center, as Ms. Moran was not an "employee" of the Center, she is not entitled to compensation for unpaid wages pursuant to § 28-14-4, the statute that allows "an employee [who] separates or is separated from the payroll of an employer" to file a claim for unpaid wages or compensation.
In order for the Hearing Officer to hear and decide Ms. Moran's claim against the Center, she was required to find that Ms. Moran was an "employee" of the Center for the relevant period of time. Section 28-14-1, the definitional section of the statute under which Ms. Moran's claim was brought, defines an "employee" as "any person suffered or permitted to work by an employer, except that independent contractors or subcontractors shall not be considered employees." This definition of "employee" is completely circular. In addition, neither party has cited any other provision of the statutory scheme that gives specific guidance on the term's meaning or otherwise suggests how to construe it. However, there is well-established Rhode Island case law defining the nature of the employer-employee relationship and distinguishing between an "employee" and an "independent contractor." *Page 9 
Determining whether an employer-employee relationship exists between two parties is a mixed question of law and fact. See Di Orio v. R.L.Platter, Inc., 100 R.I. 117, 122, 211 A.2d 642, 645 (1965). In making this determination, "the test [as to] whether a person is [an employee or] an independent contractor is based on the employer's right or power to exercise control over the method and means of performing the work and not merely the exercise of actual control." Absi v. State Dep't ofAdmin., 785 A.2d 554, 556 (R.I. 2001) (quoting Pasetti v. Brusa,81 R.I. 88, 91, 98 A.2d 833, 834 (1953)). Although our Supreme Court has not enumerated all of the facts that must exist in order for a reviewing court to conclude that one party has the right or power to control the work of an "employee," it has found the following to be of particular importance: the provisions of the employment contract between the parties, if any; the method of payment; the option as to time in doing the work; and the giving of instructions by the employer. Henry v.Mondillo. 49 R.I. 261, 142 A.2d 230, 232 (1928). In specific applications of the "right or power to control" test, our Supreme Court has found that an individual is laboring as an "independent contractor" and not as an "employee" where he or she contracts to do a piece of work according to his or her own methods, without being subject to the control of his or her employer except as to the results of the work.See Lake v. Bennett. 41 R.I. 154, 156, 103 A. 145 (1918). An individual has also been considered an "independent contractor" where he or she hires his or her own labor and furnishes his or her own materials and tools for the work. See O'Connor v. Narragansett Electric Co..54 R.I. 317, 172 A. 889, 891 (1934). Furthermore, if the person takes only occasional jobs, considers himself or herself to be an "independent contractor," is paid in cash, and arranges his or her transportation to the work site and hours of work, he or she *Page 10 
can also be regarded as an independent contractor. See Laliberte v.Salum, 503 A.2d 510, 513 (R.I. 1986).
Although there are no Rhode Island cases that deal specifically with the employment status of an individual laboring as an administrative assistant or secretary, this Court finds the following New York cases to be persuasive. In In re Whitford, 257 A.D.2d 946, 684 N.Y.S.2d 324
(1999), the Supreme Court of New York, Appellate Division, held that a person laboring as a legal secretary for an attorney was an "employee" and not an "independent contractor," as the claimant answered the telephone, opened the attorney's mail, and prepared bills and documents for the attorney at his instruction, subject to his approval, and using the attorney's equipment and supplies. In addition, theWhitford Court found that the claimant "was not in business for herself," as she "had no business cards, stationery, or any other indicia of self-employment." Id In In re Barone. 257 A.2d 950,684 N.Y.S.2d 320 (1999), the same court that decided Whitford held that the claimant, laboring as an administrative assistant for a private investigator, was an "employee" and not an "independent contractor" because the claimant was "an integral part of [the employer's] business[.]" Barone, 257 A.2d at 951, 684 N.Y.S.2d at 321. TheBarone Court focused on the following: the claimant answered the employer's telephones, typed reports, and prepared the payroll; the claimant was supplied with the business' letterhead and a computer for her work use; the claimant worked exclusively for the employer and was paid a weekly salary; and the employer exercised considerable control over the claimant's work for the business. Id Finally, in In reStuckelman. 16 A.D.3d 882, 791 N.Y.S.2d 225 (2005), the Appellate Division of the New York Supreme Court held that the claimant, laboring as a legal secretary, was an *Page 11 
"employee," despite the fact that the law firm considered her to be an independent contractor and treated her as such for tax purposes, because the claimant performed her duties at the law firm's office, used its equipment and supplies, answered the firm's telephones, was paid on an hourly basis, was required to account for the hours that she worked, and because she needed the office manager's permission to make changes to her work schedule.
It is clear that our Supreme Court's "employee-independent contractor" jurisprudence is fluid and fact-intensive. Indeed, our Supreme Court has itself recognized that it "is impossible to determine the relationship of employer and employee by any hard and fast rule[,]" and that "no single phase of the evidence is determinative of the question" of whether an individual is laboring as an "employee" or an "independent contractor." Pi Orio. 100 R.I. at 121-122, 211 A.2d at 644 (citingSormanti v. Marsor Jewelry Co.. 83 R.I. 438, 441, 118 A.2d 339, 340
(1955)).
In her decision, the Hearing Officer failed to address whether the Center had the right or power to control the method and means of Ms. Moran's work. What the Hearing Officer did find was that Ms. Moran was an "employee" of the Center, as that term is contemplated by § 28-14-4, because the Center "held [Ms. Moran] out as an administrative assistant" by issuing a business card to her and by listing her as an administrative assistant in the Center's magazine, and because Ms. Moran was not a "partner" in the Center's business. (Hearing Officer's Dec. at 4.)
Section 2.03 of the Restatement (Third) of Agency defines "apparent authority" as "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party
reasonably believes the actor has authority to act on behalf of *Page 12 
the principal and that belief is traceable to the principal's manifestations." (Emphasis added.) As the Comment to § 2.03 makes clear, "[t]he definition in this section does not presuppose the present or prior existence of an agency relationship. . . ." Thus, while the information contained on the business card and advertisement reasonably could have created an appearance in the minds of third parties that the Center conferred authority on Ms. Moran to act on the Center's behalf as an administrative assistant, it does not resolve the more fundamental question of whether Ms. Grover "manifested] assent to [Ms. Moran] that [Ms. Moran] . . . act on the . . . behalf [of the Center] and subject to the [Center's] control, and [whether] [Ms. Moran] manifested] assent or otherwise consented] . . . to act" in this capacity. Restatement (Third) of Agency § 1.01.
Furthermore, with respect to the Hearing Officer's partnership finding, section 14A of the Restatement (Second) of Agency defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit." Based on this definition, the Hearing Officer reasoned that since Ms. Moran was not associating with Ms. Grover to carry on as co-owners of the Center for profit, she automatically falls into the category of "employee." This reasoning does not, however, resolve the issue of whether "the time and effort [Ms. Moran] g[ave] to the business" of the Center was that of an "employee" entitled to unpaid wages pursuant to § 28-14-4, or that of an "independent contractor" outside the ambit of the statute. Ms. Moran's mere status as a "non-partner" is not "such relevant evidence that a reasonable mind might accept [it] as adequate to support [the] conclusion" that Ms. Moran "was an employee who should have received wages." Newport Shipyard, Inc., 673 A.2d at 459. (Hearing Officer's Dec. at 4.) *Page 13 
The record before this Court reflects that the Hearing Officer "fail[ed] to disclose the basic findings upon which [her] ultimate findings are premised. . . ." Hooper, 104 R.I. at 44,241 A.2d at 815-816. Accordingly, this matter must be remanded to the Department of Labor and Training for further and more specific findings. At a minimum, the Hearing Officer must make additional findings of fact on the issue of whether the Center had the right or power to control the manner and method of Ms. Moran's work. The Hearing Officer's inquiry into Ms. Moran's employment status could be guided by the following precepts articulated in § 220 of the Restatement (Second) of Agency:
 • The extent of control which, by agreement, the Center or Ms. Grover could exercise over the details of Ms. Moran's work;
 • Whether or not Ms. Moran was engaged in a distinct occupation or business;
 • Whether the type of work performed by Ms. Moran was of a type usually done under the direction of the employer or by a specialist without supervision;
 • The skill required in the particular occupation performed by Ms. Moran;
 • Whether the Center or Ms. Moran supplied the instrumentalities, tools, and the place of work for Ms. Moran, the person doing the work;
 • The length of time for which Ms. Moran was employed by the Center;
 • The method of payment, whether by the time or by the j ob;
 • Whether or not the work performed by Ms. Moran was part of the regular business of the Center;
 • Whether or not the parties believed they were creating an employer-employee relationship; and
 • Whether the Center was or was not in business. *Page 14 
 Conclusion
Having reviewed the entire record before it, this Court finds that the Hearing Officer's decision must be remanded for further findings of fact consistent with this Decision. This Court will retain jurisdiction.
[1] Section 28-14-4 reads, in pertinent part: "Whenever anemployee separates or is separated from the payroll of an employer, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment." (Emphasis added.)
[2] Because the parties did not enter into an agreement with respect to Ms. Moran's hourly wage, the Hearing Officer concluded that her unpaid wages would be calculated using the minimum hourly wage for the period in question, $7.10. The Hearing Officer found that Ms. Moran worked thirty-five hours per week at the Center for the period of March 13, 2006 through October 25, 2006. Multiplying the prevailing minimum wage by the number of days worked, taking due account of holidays, the Hearing Officer found that Ms. Moran was entitled to unpaid wages of $7802.90. However, as Ms. Moran produced a 1099 form indicating that she had been paid $710 for this period of time, her unpaid wages were reduced to $7092.90. (Hearing Officer's Dec. at 4.)