DECISION
This is an appeal from a decision of an appeals officer of the Rhode Island Department of Human Services (DHS) limiting the amount of financial assistance awarded to the plaintiff, Patrick Legein (Legein), for post-secondary education expenses. Legein seeks a reversal or modification of that decision and requests any additional relief as is deemed just, including an award of attorney's fees. This court's exercise of jurisdiction over this matter is pursuant to G.L. 1956 § 42-35-15.
 FACTS and TRAVEL
A perusal of the record reveals that in 1990 Legein suffered a severe head injury which led to numerous medical difficulties, including paralysis of his right side. At the time of the injury, Legein was enrolled at the University of Rhode Island (URI) and was one course away from obtaining a bachelor of arts degree. Seeking financial assistance to help complete the course, Legein applied for and received a grant from the Office of Rehabilitation Services (ORS), a division of the DHS. He then finished the course, graduated, and sought employment as a social worker in a group home for persons with cognitive impairments.
Unfortunately, Legein's prospects of working in such an environment were curtailed by the burdens of his physical handicap, so he revised his vocational outlook and decided to become a rehabilitation counselor. In order to increase his marketability, Legein enrolled in the graduate program at Northeastern University in the fall of 1993 and sought a master's degree in rehabilitation counseling. He again petitioned the ORS for financial assistance but was this time denied. Legein filed a timely appeal to the DHS. In the spring of 1994, during the pendency of his appeal to the DHS, Legein began schooling at Northeastern University aided financially by student loan funds, money earned during summer employment, and social security benefits. In June 1995, a DHS appeals officer sustained Legein's appeal and ordered the ORS to provide him with financial assistance.
Pursuant to its internal policy and procedures, the ORS obtained from the financial aid office of Northeastern University a breakdown of Legein's overall costs, any monetary contributions he had made to his education, and the amount of his outstanding financial need. These figures were then reviewed by the ORS and, after some modification, were compiled to arrive at an amount reflecting the ORS's calculation of Legein's outstanding financial need. For the spring trimester of 1994, Legein's first at Northeastern University, the ORS determined that he had an unmet financial need of $4,635. For the next full academic year (1994-1995), Legein's need rose to $14,425. Finally, in his last full academic year (1995-1996), Legein's financial need was assessed at $14,835 Nevertheless, relying on a separate regulation, the ORS concluded that Legein was entitled only to $3,700 per academic year since his annual income during the dates in question was above (albeit only slightly) the federal poverty guidelines. Thus, for the spring trimester of 1994 Legein received $1,233 (one-third of $3700), and for each of the following two full academic terms he received $3700. Unsatisfied with the award amount, Legein again appealed to the DHS. An administrative hearing was held on January 31, 1996. Subsequently, a DHS appeals officer, in a written Administrative Hearing Decision that became final on July 5, 1996, determined that the ORS had properly calculated Legein's award.
Legein thereafter appealed to this court where he attacks the propriety of the Administrative Hearing Decision on essentially three fronts. First, he argues that the DHS violated federal law in "capping" his award at $3,700. Legein contends that federal law required that the DHS base his award on an individual assessment of financial need and, since his financial need was greater than $3,700 per academic year, the DHS violated this mandate by limiting the amount of the award. Legein also argues that federal law required that the DHS's financial need standard be equitable and that the standard currently utilized by the DHS runs contrary to this requirement by "capping" the award at $3,700 for all individuals above the federal poverty threshold regardless of the cost of an individual's training or his or her ability to meet that cost. Second, Legein contends that the DHS used an arbitrary and capricious formula in arriving at the award. He argues that the DHS's method of calculating the amount of financial assistance for those individuals seeking post-secondary training should be the same as the standard used for individuals seeking other rehabilitative services. If this were the case, Legein claims that he would have obtained a fair amount of financial assistance from the DHS. Third, Legein argues that the DHS hearing officer should have waived the federal poverty guideline restriction in this particular case because Legein exceeded the poverty threshold only after he detrimentally relied on the wrongful denial of financial assistance made by the ORS in 1993 and, due to that reliance, obtained summer employment to help offset the costs of graduate school.
 STANDARD OF REVIEW
This Court's review of a DHS decision is governed by G.L.42-35-15 (g) which provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [sic], conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
With this statute as its polestar, this Court is limited to an examination of the certified record to determine whether any legally competent evidence exists in the record to support the agency's decision. Rhode Island Public TelecommunicationsAuthority v. Rhode Island State Labor Relations Board,650 A.2d 479, 485 (R.I. 1994). If any legally competent evidence exists, this Court is required to uphold the agency's conclusions unless they rest on any of the six criteria listed above. Id.
 THE VOCATIONAL REHABILITATION PROGRAM
The Rehabilitation Services Administration, a division of the United States Department of Education, is responsible for administering the federal vocational rehabilitation (VR) program.29 U.S.C. § 702 (a). A primary function of this federal program is to
 assist States in operating a comprehensive, coordinated, effective, efficient, and accountable program of vocational rehabilitation that is designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, and capabilities, so that such individuals may prepare for and engage in gainful employment. 29 U.S.C. § 720 (a)(2).
In this state, the DHS is responsible for implementing the federally regulated VR program. See, G.L. 1956 § 42-12-1
(2)(a). Pursuant to § 42-12-11, the DHS must adopt and comply with "such methods of administration as are found by the federal government to be necessary for the proper and efficient operation" of the state VR program. of particular importance to the case at bar is this state's requirement to provide services for vocational training to individuals with disabilities in order to render such individuals employable. 29 U.S.C. § 723
(a)(3). These services include, but are not limited to, funding for certain school-related expenses. Id. The DHS recognizes that training is not likely to exceed the bachelor's level for post-secondary training, but funding is nevertheless available for those who, because of their substantial handicap to employment, require further education to become employable. 21 R.I.R.C. 15 050 002 86.
According to federal regulations, states may consider the financial need of a disabled individual in determining the extent of available vocational training services. 34 C.F.R. 361.47 (2). However, if a state chooses to consider an applicant's financial need, it must maintain written policies covering the types of services for which a financial needs test is considered. Id.
The State of Rhode Island has opted to consider financial need in determining the amount of assistance available to disabled individuals seeking vocational training assistance. 21 C.R.I.R. 15 050 002-30. With respect to post-secondary training, the DHS maintains the appropriate written guidelines contained in its "Policy and Procedures Manual" (manual). 21 C.R.I.R. 15 050 002-85-86.11. Pursuant to these policies, the ORS, acting as the VR agency of the DHS, oversees a detailed process (referred to as an "economic needs test") through which an applicant submits to it an array of financial data indicating the individual's expenses, possible contribution to education, and remaining financial need. The data is then compiled to arrive at a VR award amount.
The economic needs test process begins at the financial aid office of the school that the applicant wishes to attend. There, the financial aid officer completes an "ORS-28" form sent by the ORS. This form contains a breakdown of the institutional budget, including tuition, fees, books, room and board, and related personal expenses. These expenses represent the "Total Direct Expenses" for the academic term. Next, the financial aid officer must determine the amount of money the applicant is personally able to contribute to his or her educational expenses. Finally, the financial aid officer must calculate the amount of financial aid the applicant has obtained through federal and private funding. Upon completion of these three steps, the financial aid officer subtracts the amount of contribution, including the financial aid, from the total budget. The remaining amount (if any) represents the "Net Remaining Need" of the applicant. The ORS-28 form is then sent back to the ORS where the ORS transcribes the financial information onto a "Training Grant Worksheet." However, the ORS is permitted to adjust the totals received by the financial aid officer to reflect more accurately an applicant's financial situation. For instance, if the financial aid officer includes room and board expenses in the institutional budget, but the applicant resides at home or elsewhere off-campus, the ORS will eliminate this expense from the worksheet. The worksheet contains columns for Net Remaining Need, Total Direct Expenses, Financial Aid Total, Unmet Need and Vocational Rehabilitation Award.
After filling in the amount of Total Direct Expenses and the Financial Aid Total, the ORS officer is instructed by the manual to subtract the latter from the former to arrive at the applicant's Unmet Need. This figure will differ from the Net Remaining Need calculated by the financial aid office since personal contributions are not now included in the calculation.
Finally, the ORS manual contains a page marked "Instructions," which delineates the proper method of calculation used by the ORS (after the preliminary financial analysis has been completed) to ultimately arrive at the VR award. According to the instructions, an independent student with income above the federal poverty level (such as Legein) is entitled to receive the "Unmet need up to the Standard Agency Grant or up to the balance of the cost [the Net Remaining Need] as calculated on the worksheet, whichever is lower." 21 R.I.R.C. 15 050 002 86.11 The Standard Agency Grant is defined by the manual as "the tuition of the State university, rounded to the nearest $100, plus $300." 21 R.I.R.C. 15 050 002 86.7.
 LEGEIN'S AWARD
The financial aid office at Northeastern University determined that Legein had a Net Remaining Need for the spring trimester of 1994 equal to zero; a Net Remaining Need for academic year 1994-1995 equal to $2,587; and a Net Remaining Need for academic year 1995-1996 equal to $3,700.
The financial aid office also determined that Legein received federal financial aid loans in the amount of $5,281 for the spring trimester of 1994; $18,615 for 1994-1995; and $13.002 for 1995-1996. However, the ORS failed to include these totals on the Training Grant Worksheet, or in the final calculation of Legein's Unmet Need. Instead, the ORS determined that Legein's Unmet need for the spring trimester of 1994 was $4,635; his Unmet need for academic year 1994-1995 was $14,425; and his financial shortcoming for academic year 1995-96 was $14,835. These figures reflected the total amount of direct expenses as determined by the ORS after reviewing the data submitted to it by the financial aid office and after making any requisite adjustments.
To arrive at Legein's VR award, the ORS next determined that since Legein was above the federal poverty guidelines for each year in question, his award was limited to the standard agency grant. The ORS was not provided with any information relative to Legein's 1993 income, and therefore it assumed that his income exceeded the federal poverty guidelines.[1] However, for the academic year spanning 1994-1995, Legein's income was reported at $7,824 while the federal poverty threshold for that year was set at $7,360. The following academic year, Legein's income increased to $8,142 and the federal poverty threshold climbed to $7,470.
In reaching its conclusion, the ORS relied on Section 115.28 (III)(B)(3)(h)(iii) of the manual. That section provides:
 Agency financial participation is further limited by a standard Agency grant (the tuition of the State University, rounded to the nearest $100, plus $300) which is applied to the Unmet Need as cited on the Agency's Training Grant Worksheet. The only exception to the Standard Grant limitation is for individuals who, according to the SAR [Student Aid Report], (a) have incomes below the poverty guidelines and (b) are independent students. They shall have their direct expenses covered by the Agency up to the Net Remaining Need or Unmet Need, whichever is lower.
Apparently interpreting this section to mean that Legein was limited only to the standard agency grant because his income exceeded the federal poverty threshold, the ORS denied Legein a seemingly substantial amount of needed financial support and limited his award to $3,700. It is this action by the ORS that prompted Legein to appeal to this Court and claim the errors stated above.
 ANALYSIS
Legein first contends that the ORS violated federal law by limiting the amount of his VR award to the standard agency grant even though his outstanding financial need was seemingly greater than $3,700 per academic year. Section 115.28 (III)(B)(3)(h)(iii) of the ORS's manual clearly provides that the standard agency grant may act to limit the ultimate VR award if an independent individual's income exceeds the federal poverty guidelines. Since these policies and procedures were promulgated by the DHS pursuant to specific authority granted to it by the General Assembly in § 42-12-11, the regulations are legislative rules that carry the force and effect of law and possess a presumption of validity. E.g., Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983). Upon review of the policies and procedures, this Court finds that the DHS regulations provide for vocational training assistance based upon an individual assessment of need and that this assistance is equitably distributed.
In determining the extent of available VR services, states must develop an Individualized Written Rehabilitation Program (IWRP) for each eligible disabled person. 29 U.S.C. § 721
(a)(9). The IWRP must "be designed to achieve the employment objective of the individual, consistent with the unique strengths, resources priorities, concerns, abilities, and capabilities, of the individual." 29 U.S.C. § 722
(b)(1)(B)(i). Thus, each disabled individual who seeks VR services enjoys the right to an assessment of need based upon their unique physical or mental condition. In the present case, an IWRP was created by the ORS indicating Legein's vocational goal and hope for financial assistance in obtaining a Master's degree in Rehabilitation Counseling. The ORS then conducted the appropriate economic needs test by gathering the relevant financial data from Northeastern University and other outside sources so that it could determine the extent to which it could assist Legein in his schooling.
A review of the procedures promulgated by the DHS governing the economic needs test for applicants seeking financial assistance for post-secondary education demonstrates that the DHS fully complied with the federal mandate that each state provide vocational rehabilitation services for individuals with disabilities "consistent with their unique strengths,resources, priorities, concerns, abilities, and capabilities."29 U.S.C. § 722 (a)(2). (Emphasis added). The financial information gathered by the ORS provided it with an accurate reflection of Legein's financial situation and need. The ORS had information relevant to Legein's total education expenses, his personal contribution, and his financial aid. From this, the ORS could make an equitable determination, based on Legein's specific individual need, of the amount of funding it would contribute to his education. As a result, the DHS regulations fully comport with federal requirements.
However, although the policies and procedures established by the DHS would in theory produce an equitable VR award based on Legein's individual need, it appears from the record that the ORS erred in its actual implementation of these regulations and improperly calculated Legein's VR award. First, the ORS apparently erred in its calculation and application of the standard agency grant. The relevant provision from the manual indicates that the standard agency grant is "the tuition of the State University, rounded to the nearest $100, plus $300." 21 R.I.R.C. 15 050 002 86.7. However, there is no evidence in the record to indicate that this formula was used by the ORS in calculating what eventually became Legein's VR award. Moreover, in the Administrative Hearing Decision issued by the DHS, the hearing officer established as a finding of fact that "[t]he ORS calculated that, because the appellant was above a certain Federal poverty level income guideline, the maximum grant the ORS could issue to him was $3,700 per school year." (Decision at 2). This factual determination was reiterated time and again during the Administrative Hearing held on January 31, 1996, and in the papers submitted to the Court by the DHS. This method of arriving at Legein's VR award is contrary to that prescribed in the manual. Section 115.28 (III)(b)(3)(h)(iii) clearly provides that the "financial participation is further limited by a standard Agency grant." (Emphasis added). This provision, standing alone, in no way limits an individual's award to the standard agency grant should their income exceed the federal poverty threshold. The effect of this provision is to establish the amount of the standard agency grant for independent applicants above the federal poverty limit so that this figure can be compared with the Net Remaining Cost and the lower of the two amounts be awarded to the applicant. Therefore, even assuming that the DHS properly calculated Legein's award, it would appear that he would not be entitled to any financial assistance for the spring trimester of 1994 and the full academic year spanning 1994-1995 since his Net Remaining Need was lower than the standard agency grant.
The DHS apparently committed a second error in computing Legein's VR award. The Court has reviewed the entire record including the transcript of the Administrative Hearing held on January 31, 1996 before the DHS appeals officer, and the numerous financial documents submitted by both parties. The record appears to reveal that the ORS again erred in calculating Legein's award by not applying the financial aid he received to his Unmet Need as required by the instructions in the manual and on the Training Grant Worksheet. The manual defines the ORS's policy and purpose as providing "training as one means to employment for selected individuals with disabilities and [the ORS] will encourage the most economically efficient training appropriate for the vocational goal." 21 R.I.R.C. 15 050 002 85 (Emphasis added). Further, an ORS counselor is instructed to utilize "comparable services and benefits as available" when assisting an individual in obtaining vocational training. 21 R.I.R.C. 15 050 002 85-86. Additionally the DHS, in accordance with federal regulations, prohibits the advancement of financial services to those attending "institutions of higher education" such as "universities" unless "maximum efforts have been made by the State unit to secure grant assistance in whole or in part from other sources." 21 R.I.R.C. 15 050 002 86. The DHS recognizes that "[t]he regulations quoted above are explicit about the necessity to seek comparable services and benefits prior to consideration of Agency funding for training in institutions of higher education, but it is the Agency's policy to seek comparable services and benefits for any type of training." Id.
Finally, the manual designates post-secondary loans and workstudy commitments as "comparable benefits if individuals accept them as part of their financial aid packages." 21 R.I.R.C. 15 050 002 86.7.
Pursuant to these policies and procedures, Legein was required to seek financial assistance from other sources before he could obtain assistance from the ORS. Furthermore, any monies loaned to him were to be counted against his Unmet Need by the ORS when calculating his VR award. This last procedural undertaking never occurred despite the fact that Legein received federal loan money for the spring trimester of 1994 and each of the two following academic years. There is no evidence in the record to suggest that the ORS had the discretion to omit from the calculation of Legein's VR award the financial aid he obtained from the federal government. However, at the Administrative Hearing held on January 31, 1996, a representative of the DHS was questioned about whether loans were considered a comparable service when calculating an applicant's training grant. The representative responded that he "advise[s] the student to, uh, reduce their loans. uh, if they are, so that they can get the maximum amount of VR payment." (TR. 29) This advice would appear to contradict the manual requirement that "maximum efforts" be used to secure financial assistance from other sources.
Under G.L. 1956 § 42-35-12, "[f]indings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting thefindings." (Emphasis added). The reasons why such factfinding is necessary are well established and "have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." Hooperv. Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968) (quoting 2 Davis, Administrative Law Treatise, § 16.05 at 444). Any administrative decision that fails to include findings of fact required by statute cannot be upheld on appeal. Sakonnet Rogersv. Coastal Resources Management, 536 A.2d 893, 896 (R.I. 1988). Additionally, when an agency decision fails to include sufficient findings of fact, the Court will not search the record for evidence supporting the agency decision nor will it decide for itself what is proper in the circumstances. See Hooper, 104 R.I. at 44, 241 A.2d at 815. Instead, an appropriate avenue of procedure would be to remand the case and give the agency "an opportunity to clarify and complete its decision." Hooper, 104 R.I. at 44-45; 241 A.2d at 815-816.
The DHS was required by statute to support its factual findings with a concise and explicit statement indicating the foundation upon which the findings rested. With respect to the standard agency grant, there was no evidence in the record demonstrating that the ORS properly calculated this amount or, after calculating it, compared it with the Net Remaining Cost to determine whether the standard agency grant was the lower of the two amounts. Therefore, there was no concise and explicit statement to support the finding that "because the appellant was above a certain Federal poverty level income guideline, the maximum grant the ORS could issue to him was $3,700.00 per school year." (Decision at 2). In addition, the DHS failed to demonstrate in its factual findings why the financial aid accepted by Legein was not counted toward his VR award as required by the manual. Therefore, the Court is constrained to conclude that the findings by the DHS that Legein's award was properly calculated and that the award amount was correct lack factual support of the record.
Accordingly the Court finds that despite the validity of the policies and procedures utilized by the ORS in arriving at Legein's award, there exists no legally competent evidence in the record to support the DHS's decision to affirm the VR award made by the ORS to Legein.
Legein next argues that the DHS used arbitrary and capricious guidelines in calculating his award. He contends that the DHS should maintain a uniform set of guidelines for calculating the amount of financial participation it will provide to disabled individuals seeking any type of vocational rehabilitation service. Instead, Legein points out that the DHS maintains separate economic need guidelines for individuals seeking post-secondary training while applying a different, and he claims more appropriate, set of guidelines for all other types of vocational rehabilitation services. The Court rejects this argument since the expenses associated with vocational training are often greater than any other type of rehabilitative service that may be offered by the DHS. Thus, the DHS has the discretion to establish reasonable cost-effective methods aimed at utilizing comparable benefits readily available to an applicant in order to reduce the amount of financial assistance that the DHS must contribute.
As stated above, the guidelines currently in effect carry a presumption of validity. See, Lerner supra at 1358. After careful review of the policy and procedures governing the economic needs test for post-secondary education, this Court concludes that this presumption has not been rebutted. The guidelines ensure that the ORS is presented with an accurate accounting of the costs associated with post-secondary education and the financial needs of the applicant, including any comparable benefits that an applicant has obtained through loans or workstudy. From this, the ORS is able to make a cost-efficient determination of the extent of its participation based on the actual individual need of the particular applicant. Consequently, the record does not support Legein's argument that the economic needs guidelines governing post-secondary education are arbitrary or capricious.
Legein next argues that the DHS should be estopped from applying the federal poverty guidelines against his economic need in this case because, but for his reliance on the initial denial by the ORS of financial assistance, he would not have sought summer employment and his annual income would not have exceeded the federal poverty threshold. The Court finds no merit in this contention. It is well settled that the equitable doctrine of estoppel may be invoked against an administrative agency when the circumstances so require. See, e.g., Greenwich Bay Yacht BasinAssociation v. Brown, 537 A.2d 988, 991 (R.I. 1988); Loisellev. City of East Providence, 116 R.I. 585, 593, 359 A.2d 345, 349 (1976); Ferrelli v. Department of Employment Security,106 R.I. 588, 593, 261 A.2d 906, 909 (1970). However, "this relief is extraordinary and will not be applied unless the equities clearly must be balanced in favor of the parties seeking relief under this doctrine." Greenwich Bay Yacht Basin Association, 537 A.2d at 991.
As stated above, Legein was required to seek financial assistance from other sources as a prerequisite to obtaining ORS assistance. The fact that he was able to be gainfully employed during the summers in between academic terms should be considered a positive step in Legein's journey down the road of rehabilitation. The difference in the amount of available financial assistance for those above or below the federal poverty guidelines exists so that those individuals who are so disabled that they cannot work may receive a greater benefit than those who are able to work and contribute to their education. The purpose of rehabilitative services is to foster independence. Applicants are expected to contribute to their training expenses whether it be through federal student loans, workstudy commitments, or money earned from employment. As such, the principles of equity demand that the ORS guidelines not reward indolence. For these reasons, the Court finds that the doctrine of estoppel is inapplicable to this case and that the DHS properly applied the federal poverty guidelines to Legein's economic needs test.
The Administrative Hearing Decision that became final on July 5, 1996 and affirmed the ORS decision to limit Legein's VR award to $3,700 per academic term is hereby vacated. The record in this case is remanded to the DHS appeals officer so that he may revise Legein's award in light of this Court's decision. In doing so, the appeals officer must provide a concise and explicit statement of the underlying facts that led to his conclusion that $3,700 was the proper amount of the standard agency grant. The appeals officer must also determine if the standard agency grant is less than the amount of Legein's Net Remaining Need for the years in question so that he may base Legein's award on the lower of the two amounts. Additionally, he shall apply Legein's financial aid benefits to the calculation of the VR award or provide this Court with an explanation of why the financial aid totals should not be counted. The Court shall retain jurisdiction so that it may review the decision of the appeals officer after he complies with the above instructions.
Finally, in his complaint filed to this Court Legein requested an award of attorney's fees pursuant to G.L. 1956 §42-92-3. Under this section the Court may award reasonable attorney's fees to a prevailing party in connection with that party's successful prosecution of his or her case at an adjudicatory proceeding. However, attorney's fees will be denied pursuant to this section if the agency was "substantially justified in actions leading to the proceedings and in the proceeding itself," or if, in light of the surrounding circumstances, the award of such fees would be unjust. Since the Court has remanded this case to the DHS for further proceedings, an award or denial of attorney's fees at this time would be premature. Therefore, the Court, after review of the appeals officer's decision, will address Legein's request for attorney's fees.
Counsel shall submit the appropriate order for entry.
[1] This court will not comment on the propriety of that decision since Legein has failed to challenge the determination made by the ORS that his income exceeded the poverty threshold for 1993.